## Brown *v.* John Doe *ex. dem.* Heirs of Weast.

Where one purchases land with the money of another, and takes the conveyance, or
has been paid the purchase money of land and has not conveyed, he is the trustee of
a satisfied trust; and neither he nor his heir can set up the legal title in an action of
ejectment against the beneficiary.

IN ERROR from the circuit court of the county of Adams.

This was an action of ejectment brought by the heirs of John
Weast against Arthur Brown, the tenant in possession. On the
trial before the jury, the plaintiffs gave in evidence a deed for the
land in question, made by John J. Whittington and others to John
Weast; and then introduced a witness whose testimony is, in sub-
stance, as follows: That he knew the land in controversy and had
known it for many years as the Fowler tract; that Fowler sold it
to Whittington, the father of the grantors, who are the plaintiffs;
that the defendant Brown was in the possession of the land in
question at the time of the date of that deed, and had been in
possession for many years; that he went into possession in 1825
or 1826, and had lived on the land ever since; that he had heard
Brown say that the legal title to said land was in Weast, and
Brown stated to him that at the time of the purchase, he, said
Brown, was embarrassed, and Mr. Weast purchased said land for
him, and that he, Brown, paid a part of the purchase money at
the time, and had since paid to Weast the whole of the purchase
money, and that Weast had told him, Brown, he would make him
a deed whenever he wanted it. That Brown's wife was the
daughter of said John Weast, and that she had departed this life,
but had left several children who were then living.

The witness further stated that John Weast was unable to
write, that he resided near to Brown's residence seven or eight
years after the purchase, and witness never heard of his setting

15*

up any claim to the land; that Brown, in all the conversations he ever had with the witness, claimed the land as his own. Witness further stated that Weast cultivated a part of the land one or two years. And this was all the evidence in the case. Whereupon the plaintiff's counsel moved the court to charge the jury as follows, viz: "The jury cannot find according to the equitable, but only according to the legal title; that if the jury believe from the evidence that the legal title is in the plaintiffs, they must find for the plaintiffs; that if Brown has only an equitable title, he cannot set it up against the legal title; that the equitable title cannot prevail in this court against the legal title." Which instructions the court gave, to which decision the defendant excepted.

Verdict for plaintiffs.

BOYD for plaintiffs in error.

The question for determination in this court is whether Brown's title is what was considered in the books an equitable title merely, as against the co-heirs of his wife. It may be proper, first, to remark, that as the defendant's wife and all the plaintiffs were co-parceners, it was incumbent on the plaintiffs to prove an actual ouster, which does not appear to have been done. But the other is the material ground.

We are aware of the rule, that the legal title must prevail in the action of ejectment; but this rule is subject to modifications. The legal title, as a mere abstraction, may be vested in a party, who, according to other rules of law, will not be permitted to assert it generally, or, at all events, not against certain other parties, to whom he sustains peculiar relations.

Thus, for instance, a satisfied mortgage, retained by the mortgagee, who has received payment of the mortgage debt, but made no reconveyance of the mortgaged premises, will not be regarded as such a legal title as to authorize the mortgagee to oust the mortgagor, who may happen to be in possession. Yet the legal title, after forfeiture, is in the mortgagee as absolutely as if there were no condition to the deed.

In such case, also, the mortgagor out of possession may maintain ejectment against the mortgagee, or his assignee. The law, if necessary, will presume a re-conveyance, and will not allow

the presumption to be rebutted.    So the same modification is admitted in regard to a trust deed, where the trust has been accomplished.    When the trustee has executed all the purposes for which the deed was made, and nothing remains for him to do but to reconvey to the person ultimately entitled, or the *cestui que trust*, although the naked legal title may be said to remain in him, yet he cannot either bring an action of ejectment against his *cestui que trust* or defend one brought against him by the *cestui que trust*, upon the mere abstraction of a title.    On the contrary, the principle appears well settled, that in all such cases the legal title shall not be used; the party holding it for no other purpose than to recovery, shall not be permitted to assert it in any way in court against the person to whom it is his duty to make the reconveyance.

Why permit the trustee, after the purposes of the trust have expired, to oust the *cestui que trust*, when, as soon as he succeeds, he must surrender to him both the possession and title.

The reason of the rule appears to be based upon the principle of preventing useless and frivolous suits, and to that end the law forbids the person holding the legal title in such cases from using it against those to whom he is bound to convey it, or will raise the presumption that the conveyance has been actually made.    2 Wendell, 109–134; 7 *Ib.* 379; 6 Munf. 38–41; 11 J. R. 437.

In this case it is proved that the land in question was purchased by John Weast with Brown's money, and for Brown, who has been in possession from a period anterior to the purchase down to the bringing the action.    That this constituted a resulting trust, see Runnels *v.* Jackson, in 1 Howard, 358.    Could Weast, if living, maintain the suit against Brown?    We think not.    He was Brown's trustee, holding the naked legal title for his benefit.    Can he assert it against Brown, who is his *cestui que trust?*    If not, can his heirs be placed in a better situation than their ancestor occupied?    Why should a recovery be allowed when the plaintiffs would be compelled, immediately after they get the defendant out of possession, to surrender to him both the possession and title?    Is it not more consonant to law and reason to hold that the plaintiffs, even if they hold the legal title, shall not use it against the defendant, who is entitled to it, and is in the enjoyment of it?    The

law would, to effect the ends of justice, in such a case, either bar the plaintiffs entirely from using this title against the defendant, or would raise a presumption that the plaintiffs have conveyed the premises to the defendant, and that the proof of the conveyance is lost. In either way the proper object would be effected, and both are in conformity with the decisions. 3 Burr. 1901, and Cowp. 46, are clear and explicit to this point. Also Doe *ex dem.* Bristow *v.* Pegge, 1 T. R. 758, n.

ARMAT for defendant in error.

Mr. Justice TURNER stated the case, and delivered the opinion of the court.

We are of opinion that Weast held as a trustee for Brown; that Brown having paid the purchase money it is a satisfied trust, and being such, neither he nor his heirs can maintain this action for the possession.

It is laid down in the case of Goodtitle *ex dem.* Hart *v.* Knot, Cowper, p. 43, that an estate in trust, merely for the benefit of the *cestui que trust*, shall not be set up against him: any thing shall rather be presumed. And in 3 Burr. 1901, the court said, they looked upon it as a settled point, that the formal title of a trustee should not in an ejectment be set up against the *cestui que trust;* because from the nature of the two rights, the *cestui que trust* is to have the possession. See 6 Peter's Rep. 432. See also 1 T. R. 758, n.; 2 Wendell, 109, 134; 7 *Ib.* 379; 6 Munf. 38, 41; 11 J. R. 437; 1 Howard, 358; Runnington's Eject. 15 to 23, 344 to 348.

If the plaintiffs could be permitted to deny the character of trustee in this case, (and they themselves proved it on the trial,) what would then be their condition? Why, that their ancestor purchased against the adverse possession of Brown; and according to the established doctrine, their deed and purchase, as against Brown, would be void. At common law a purchase under such a state of things would be maintenance. The maxim of the law, as laid down by Lord Coke, is, that nothing in action, entry, or re-entry, can be granted. The reason he assigns for this is, for the avoiding of maintenance, suppression of right, and stirring up of suits; for so, under color thereof, pretended titles might be

Brown *v.* John Doe, *ex dem.* Heirs of Weast.

granted to great men, whereby right might be trodden down.   C. L. 214, sec. 347; 5 J. R. 498; 4 Kent's Com. 438; 10 Yerger, Hogan *v.* Williams; 2 Hill's N. Y. Rep. 526; 5 Pick. 353; 4 Bibb, 424; 5 J. J. Marshall, 637; 5 Pick. 348; 1 Murphy, 348; 3 Call, 475.

The judgment is reversed, and the cause remanded for a new trial.